NOT YET SCHEDULED FOR ORAL ARGUMENT

———————————

No. 11-5298

———————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

PETER JAMES ATHERTON,
APPELLANT,

V.

DISTRICT OF COLUMBIA OFFICE OF THE MAYOR, *et al.*,
APPELLEES.

———————————

ON APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

———————————

**BRIEF FOR APPELLEE SUZANNE BAILEY-JONES**

———————————

IRVIN B. NATHAN
Attorney General for the District of Columbia

TODD S. KIM
Solicitor General

DONNA M. MURASKY
Deputy Solicitor General

RICHARD S. LOVE
Senior Assistant Attorney General
Office of the Solicitor General

Office of the Attorney General
441 4th Street, NW, Suite 600S
Washington, D.C. 20001
(202) 724-6635
Richard.Love@dc.gov

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

A. *Parties and amici*.—The plaintiff below and appellant here is Peter James Atherton. The defendants below who are appellees here are Suzanne Bailey-Jones and Daniel M. Zachem. Other defendants below against whom claims were dismissed were the District of Columbia Office of the Mayor, the Superior Court Office of the Clerk, Duane Delaney, Roy Wynn, and the Department of Justice Office of the Attorney General. There are no *amici curiae*.

B. *Ruling under review*.—Atherton appeals from the September 26, 2011, Memorandum Opinion and Order (Kennedy, J.) granting Bailey-Jones and Zachem's motions to dismiss.

C. *Related cases*.—This case has been before this Court previously in Nos. 04-5268 and 07-5195. Undersigned counsel is not aware of any other related cases.

i

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ............................................................1

STATEMENT OF THE ISSUES ..............................................................1

STATEMENT OF THE CASE..................................................................2

STATEMENT OF FACTS .......................................................................2

    1.    Statutes And Court Rules Related To Superior Court Grand Jury Service. ..................................................................................2

    2.    Mr. Atherton's Complaint....................................................3

    3.    The Evidence. ........................................................................4

    4.    The District Court's Dismissal Based On Absolute Immunity And The Prior Appeal. .................................................7

    5.    The District Court's Dismissal Based On Qualified Immunity. ...........8

STANDARD OF REVIEW ....................................................................10

SUMMARY OF ARGUMENT...............................................................10

ARGUMENT ........................................................................................14

    I.    Ms. Bailey-Jones Did Not Violate Any Constitutional Right In Dismissing Mr. Atherton From The Grand Jury..................................15

        A.    There is no constitutional right to serve on a Superior Court grand jury, and Mr. Atherton errs in trying to locate a protected liberty interest in local laws that merely create procedures. ..................................................................16

        B.    Mr. Atherton forfeited the particular contention that he had a constitutionally protected property interest in continuing grand jury service, and in any event that contention is also meritless. ..................................................................19

II.   Ms. Bailey-Jones Did Not Violate Any Clearly Established Right In Dismissing Mr. Atherton From The Grand Jury Without Judicial Involvement Where His Conduct Was Reported To Be Disrupting The Grand Jury's Business.................................................20

      A.   Neither controlling authority nor a robust consensus of persuasive authority prohibited a juror officer from dismissing a disruptive grand juror..........................................21

      B.   Mr. Atherton's Arguments For Why Qualified Immunity Should Not Apply Despite The Absence Of Controlling Authority Or A Robust Consensus Of Persuasive Authority Are Meritless..........................................................................23

           1.   This is not the rare case in which a violation of law is clear even if judicially unprecedented. ......................23

           2.   The law relating to grand jurors is not clearly established by cases addressing a court's supervision of a petit jury during trial.................................................25

           3.   Mr. Atherton may not rely on other people's constitutional rights to defeat qualified immunity, and in any event Ms. Bailey-Jones could not have reasonably known that dismissing a disruptive juror violated any clearly established right of a criminal defendant.......................................................................28

           4.   Because the qualified-immunity analysis incorporates an objective rather than subjective standard, it does not matter if Mr. Atherton sufficiently pled or submitted facially plausible evidence that Ms. Bailey-Jones knowingly violated any right, and in any event he did not do so...................29

           5.   It does not matter whether the district court was correct to consider evidence of the absence of formal processes in the Superior Court relating to grand jury discipline and the juror officer's job description, and in any event the court properly found that this evidence provided further support...................................33

CONCLUSION ....................................................................................................37

# TABLE OF AUTHORITIES

## *Cases*

*Anderson v. Creighton*, 483 U.S. 635 (1987).....................................21, 30

*\*Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011)............................. 21, 22, 30

*\*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................... 10, 31

*Atherton v. D.C. Office of the Mayor*, 567 F.3d 672 (D.C. Cir. 2009).............. 2, 7, 8

*Bame v. Dillard*, 637 F.3d 380 (D.C. Cir. 2011) ......................................10

*\*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................... 10, 31

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).............................................................................1

*\*Brandon v. District of Columbia*, 823 F.2d 644 (D.C. Cir. 1987)................... 16, 18

*Crawford-El v. Britton*, 523 U.S. 574 (1998)...................................... 9, 28

*Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735 (D.C. Cir. 1995) .........................19

*District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077 (D.C. Cir. 1984) ............34

*District of Columbia v. Brookstowne Cmty. Dev. Co.*, 987 A.2d 442 (D.C. 2010) ..................................................................................24

*Doe by Fein v. District of Columbia*, 93 F.3d 861 (D.C. Cir. 1996).......................17

*Groh v. Ramirez*, 540 U.S. 551 (2004)...................................................21

*\*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................. 14, 15, 30

*Hope v. Pelzer*, 536 U.S. 730 (2002) ....................................................23

*Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454 (1989) ............................18

*Malley v. Briggs*, 475 U.S. 335 (1986) .................................................................21

*Olim v. Wakinekona*, 461 U.S. 238 (1983)..........................................................17

*Pearson v. Callahan*, 555 U.S. 223 (2009)...................................... 8, 14, 15, 21, 28

*Perry v. Sniderman*, 408 U.S. 593 (1972)..............................................................20

*Roth v. King*, 449 F.3d 1272 (D.C. Cir. 2006)......................................................19

*Saucier v. Katz*, 533 U.S. 194 (2001)............................................................. 14, 28

*Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748 (2005) .............................19

*United States v. Bradley*, 173 F.3d 225 (3d Cir. 1999) .........................................22

*United States v. Brown*, 823 F.2d 591 (D.C. Cir. 1987).................................. 26, 27

*United States v. Menasche*, 348 U.S. 528 (1955) ..................................................25

*United States v. Williams*, 504 U.S. 36 (1992)................................................ 25, 26

*United States v. Zerduche*, 133 Fed. Appx. 599 (11th Cir. 2005) ..........................22

*Warth v. Seldin*, 422 U.S. 490 (1975).....................................................................10

*Wilburn v. Robinson*, 480 F.3d 1140 (D.C. Cir. 2007) ...........................................15

*Wilson v. Layne*, 526 U.S. 603 (1999)................................................................ 21, 22

*\*Youngbey v. March*, 676 F.3d 1114 (D.C. Cir. 2012) ............................................22

*Statutes*

28 U.S.C. § 1291 ........................................................................................................1

28 U.S.C. § 1331 ........................................................................................................1

42 U.S.C. § 1983 ........................................................................................................2

D.C. Code § 11-1901 ...................................................................2, 11, 17

D.C. Code § 11-1902(4).................................................................. 3, 25

D.C. Code § 11-1906 ........................................................................18

D.C. Code § 11-1907(b).....................................................................18

D.C. Code § 11-1908(b).................................................................3, 11, 18

*D.C. Code § 11-1908(b)(1) ......................................... 8, 12, 24, 32, 35

D.C. Code § 11-1912(a) .................................................................. 3, 20

## *Other*

Fed. R. Civ. P. 12(b)(6) ....................................................................10

Federal Rule of Appellate Procedure 32(a)(5) and (6) ...........................38

Federal Rule of Appellate Procedure 32(a)(7)(B)...................................38

D.C. Super. Ct. R. Crim. P. 6(g)....................................... 9, 12, 17, 24, 35

\* Authorities chiefly relied upon are marked with asterisks

# GLOSSARY

| | |
|---|---|
| AUSA | Assistant United States Attorney |
| JA | Joint Appendix |
| RD | Record Document |
| Rule | District of Columbia Superior Court Rule of Criminal Procedure |

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 411 (1971). This Court has jurisdiction of this appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Plaintiff Peter James Atherton claims a violation of the Due Process Clause of the Fifth Amendment because he was dismissed from grand jury service for disrupting the proceedings. The issues pertaining to appellee Suzanne Bailey-Jones, a juror officer for the Superior Court of the District of Columbia, relate to qualified immunity:

1. Whether the Due Process Clause protects an interest in grand jury service where the Constitution itself does not establish a substantive right to serve on a grand jury and local laws establishing local procedures do not create a constitutionally protected liberty or property interest in such service in the Superior Court?

2. Whether a reasonable juror officer would have known that dismissing without judicial involvement a grand juror reported by the supervisory grand jury attorney to be frustrating the grand jury's ability to conduct its business violated a clearly established right where pre-existing law did not prohibit such dismissal and District of Columbia law generally authorizes dismissal of disruptive jurors?

## STATEMENT OF THE CASE

Mr. Atherton challenges his removal from a grand jury convened by the Superior Court of the District of Columbia.  Joint Appendix ("JA") 12-25.  In his only remaining claim, he asserts that this dismissal violated his right to due process and is actionable under 42 U.S.C. § 1983.  JA 16-23.  After the district court dismissed all claims, this Court affirmed as to all defendants except a juror officer, Suzanne Bailey-Jones, and an Assistant United States Attorney ("AUSA"), Daniel Zachem.  JA 8; *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672 (D.C. Cir. 2009).  The case was remanded to the district court to determine whether Bailey-Jones and Zachem are entitled to qualified immunity.  567 F.3d at 691.  Because qualified immunity protects both, the district court granted their respective motions to dismiss.  JA 47-56.

## STATEMENT OF FACTS

**1.    Statutes And Court Rules Related To Superior Court Grand Jury Service.**

D.C. Code § 11-1901 establishes a jury selection service for the Superior Court. It provides:

> A jury selection system is hereby established for the Superior Court of the District of Columbia.  All litigants entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the residents of the District of Columbia.  In accordance with the provisions of this chapter, all qualified individuals shall have the opportunity to be considered for service on grand and petit juries in the District of Columbia and shall be obligated to serve as jurors when summoned for that purpose.

Under D.C. Code § 11-1912(a), "grand and petit jurors serving in the Superior Court shall receive fees and expenses at rates established by the Board of Judges of the Superior Court."

No juror has an absolute entitlement to remain on a jury. A statute omitted from Mr. Atherton's list of pertinent statutes (Atherton Br. 3-4) reads: "An individual summoned for jury service may be: (1) excluded by the Court on the ground that the individual may be unable to render impartial jury service or that his or her service as a juror would be likely to disrupt the proceedings." D.C. Code § 11-1908(b). The word "Court" is defined as "the Superior Court of the District of Columbia and may include any judge of the Court acting in an official capacity." D.C. Code § 11-1902(4).

District of Columbia Superior Court Rule of Criminal Procedure ("Rule") 6(g) further provides:

> A grand jury ordered by the Superior Court shall serve until discharged by the Chief Judge or other judge designated by the Chief Judge; but no grand jury may serve more than 18 months unless the Chief Judge or designee extends the service of the grand jury for a period of 6 months or less upon a determination that such extension is in the public interest. At any time for cause shown, the Chief Judge or other judge designated by the Chief Judge may excuse a juror either temporarily or permanently, and in the latter event the Chief Judge or designee may impanel another person in place of the juror excused.

**2.      Mr. Atherton's Complaint.**

The complaint alleges as follows. Mr. Atherton began serving on a grand jury on April 9, 2001. JA 14. His service caused some problems: his fellow grand jurors

3

"seemed upset" by his requests for additional information and by the prospect that, as a result, they would have to vote again on indictments they had already approved. JA 14-15. AUSA Zachem "coordinated" the grand jurors' complaints about him—that he "disrupt[ed] the grand jury proceedings when he delayed grand jury deliberations by seeking jury instructions missing from the grand jury instruction book." JA 17. AUSA Zachem "communicated this alleged disruption to [Superior Court Director of Special Operations Roy] Wynn and/or Bailey-Jones." JA 17. On April 11, 2001, AUSA Zachem entered the grand jury room and instructed Mr. Atherton to return to the Superior Court Jury Office. JA 15. Ms. Bailey-Jones, the Superior Court juror officer, dismissed him from the grand jury "because he was disruptive." JA 15.

Among other damages, Mr. Atherton sought $250,000 as compensation for the money he would have earned for 25 days of jury service and the embarrassment and humiliation he suffered from being removed from the grand jury. JA 24.

### 3.    The Evidence.

Mr. Atherton provided four exhibits to his response to defendants' original motions to dismiss. JA 26-46. First, he submitted AUSA Zachem's summary of the events leading to Mr. Atherton's dismissal, which he e-mailed to Ms. Bailey-Jones the day after the dismissal. JA 27. AUSA Zachem indicated that "several jurors raised concerns regarding an unnamed colleague who, in the view of the questioners, was inhibiting the grand jury from discharging its function." JA 27. These jurors were

4

counseled to be patient, but complaints continued that this individual, Mr. Atherton, "was clearly frustrating his colleagues." JA 27. It was reported that Mr. Atherton

> was desirous of additional written materials, including additional jury instructions and code provisions, and these requests, in conjunction with extensive questioning of both prosecutor and witness alike, was clearly agitating other members of the grand jury. Efforts were made to satisfy the requests of [Mr. Atherton] by, for example, providing xerox copies of several code provisions, but these efforts proved unsuccessful in mollifying his concerns.

JA 27. Subsequently, AUSA Zachem responded to a demand from the grand jurors to see a supervisor and saw the grand jury foreperson and Mr. Atherton "locked in an intense conversation." JA 27. Minutes later AUSA Zachem was again "summoned back to the grand jury":

> Thereafter, behind closed doors, on the record and in the presence of [Mr. Atherton], several grand jurors, no fewer than 5-6 in number, expressed the view that a single grand jury member was frustrating the grand jury's ability to conduct business. More specifically, these grand jurors, who were not contradicted by any of their number, expressed in emotional terms their belief that the offending grand juror was either unwilling or unable to follow the rules regarding, among other things, the burden of proof, an orderly deliberative process and voting.

JA 27-28. AUSA Zachem concluded by indicating that he was "entirely confident in reporting . . . that based upon my observations, if the juror was permitted to remain that [this grand jury] would not have been able to discharge its function." JA 28.

Second, Mr. Atherton submitted the job description for Ms. Bailey-Jones's position. JA 32-38. In relevant part, it provides that the juror officer "[m]anages [the jury] office and oversees supervision of juror staff," including "a newly created,

additional position . . . designed to ensure that the Superior Court grand jury process operates efficiently," and "[m]anages and supervises the selection of . . . five grand jury panels several times a month."  JA 34.  The juror officer is supposed "to make sure that the Superior Court's Jury System operates smoothly."  JA 37.  "The responsibilities" include "making quick decisions concerning the qualifying, deferring or excusing of jurors."  JA 37.

Third, Mr. Atherton submitted a November 16, 2001 letter from Duane Delaney, Clerk of the Superior Court, to an investigator in the Office of the Corporation Counsel.  JA 29-30.  The letter related that, the month after his dismissal from the grand jury, Mr. Atherton had called the court and spoken with Mr. Wynn, the director of the court's Special Operations Division.  JA 30.  Mr. Wynn informed him of the reasons for his dismissal.  JA 30.  Additionally, "Mr. Wynn informed Mr. Atherton that he could write either [to the Superior Court's] Chief Judge Rufus King, III or [Mr. Delaney] to request a hearing to explain his actions and/or appeal his dismissal. Neither the Chief Judge nor [Mr. Delaney] ever heard from Mr. Atherton."  JA 30.

Fourth, Mr. Atherton submitted an affidavit from Chief Judge King.  JA 45-46. Chief Judge King "was never contacted by anyone from the Court's jury office or the U.S. Attorney's office before or at the time" of Mr. Atherton's removal from the grand jury.  JA 45.  He acknowledged that "there were no formal procedures . . . for disciplining jurors" and that the "practice then in place did not include contacting the

6

chief judge before a grand juror was involuntarily dismissed." JA 46. Subsequently, he "changed the procedures to require that [he] be consulted before imposition of any grand jury discipline." JA 47.

**4.     The District Court's Dismissal Based On Absolute Immunity And The Prior Appeal.**

Upon consideration of this evidence, the district court dismissed Mr. Atherton's claims. JA 8; Record Document ("RD") 52. As to Ms. Bailey-Jones, the court held that Mr. Atherton failed to state a due process claim based on deprivation of a property interest and that "[t]here is no constitutional right to serve on a grand jury," but it concluded that he did state both a due process claim based on deprivation of a liberty interest established by District law and an equal protection claim. RD 52, at 6-7. Both she and AUSA Zachem were, however, entitled to absolute immunity. RD 52, at 7-8, 11.

On appeal, this Court concluded that Ms. Bailey-Jones was not entitled to absolute immunity because she was "performing administrative/managerial functions when she dismissed Atherton from the Superior Court grand jury . . . [that] were [not] functionally comparable to those of a judge." 567 F.3d at 686. This Court also denied absolute immunity to AUSA Zachem because "the activities for which he is being sued do not relate to his performance as an advocate for the government." *Id.* at 687. The Court reversed the district court's "finding that Atherton stated claims of equal protection violations by Bailey-Jones and Zachem" and remanded for the district court

7

to decide the remaining due process claim and in particular whether Ms. Bailey-Jones and AUSA Zachem could invoke qualified immunity.  *Id*. at 688.

**5.    The District Court's Dismissal Based On Qualified Immunity.**

Finding that qualified immunity protects both Ms. Bailey-Jones and AUSA Zachem, the district court granted their motions to dismiss.  JA 47-56.  The court began with the second prong of the qualified-immunity analysis because this is a case "in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right."  JA 51 (quoting *Pearson v. Callahan*, 555 U.S. 223, 227 (2009)).

The district court found, and observed that Mr. Atherton had admitted, that there were not any "decisions specifically addressing the procedural due process rights of impaneled grand jurors."  JA 52.  While Mr. Atherton referenced "cases addressing the removal of jurors during trial," the district court noted that he "wisely refrain[ed] from relying" on them and it found them unhelpful because unlike a "trial judge's supervision over a petit jury at trial," the court is not directly involved in the functioning of the grand jury.  JA 53.

The district court recognized that "District of Columbia law generally authorizes the removal of a juror on the basis that his service 'would be likely to disrupt the proceedings.'"  JA 54 (quoting D.C. Code § 11-1908(b)(1)).  Further, this provision "makes no distinction between a member of a petit jury and one of a grand

8

jury."  JA 54.  It also recognized that the Superior Court rules provide that a "grand jury ordered by the Superior Court shall serve until discharged by the Chief Judge," JA 54 (quoting D.C. Super. Ct. R. Crim. P. 6(g)), but observed that Chief Judge King's affidavit established that "there were no formal procedures in place in April 2001 for disciplining jurors" and that the "practice then in place did not include contacting the chief judge before a grand juror was involuntarily dismissed."  JA 54-55 (quoting JA 45-46).  The court also took note of the job description for the Superior Court's juror officer, whose "varied responsibilities" included making "'quick decisions concerning the qualifying, deferring or excusing of jurors.'"  JA 55 (quoting JA 37).

The district court concluded that Ms. Bailey-Jones "could not have reasonably known" that Mr. Atherton's removal from the grand jury "violated any 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  JA 55 (quoting *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).  The district court made four supporting findings.  First, at the time of Mr. Atherton's removal from the grand jury there was not any legal precedent establishing the due process right he alleged.  JA 55.  Second, there were not any "formal procedures for (and judicial involvement in) removing grand jurors in Superior Court."  JA 55.  Third, there was an "apparent informal practice of delegating grand juror removal decisions to the Juror Officer."  JA 55.  And, fourth, "the Juror Officer's job description implicitly authorize[ed] th[is] practice."  JA 55.

9

## STANDARD OF REVIEW

The Court reviews a dismissal under Fed. R. Civ. P. 12(b)(6) based on qualified immunity *de novo*. *Bame v. Dillard*, 637 F.3d 380, 384 (D.C. Cir. 2011). For purposes of this rule, "courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party," but a court need not accept "a legal conclusion couched as a factual allegation," or "naked assertion[s] [of unlawful misconduct] devoid of further factual enhancement." *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (internal quotation marks omitted). While a complaint does not need detailed factual assertions to survive a motion to dismiss, the "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim has the requisite facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 677.

## SUMMARY OF ARGUMENT

1. Mr. Atherton cannot identify a constitutionally protected interest in grand jury service. There is no constitutional right to serve on a grand jury and due process is not violated by the failure to comply with the local procedures on which Mr. Atherton relies. Those procedures do not create an entitlement prohibiting his removal from grand jury service without the process he demands—they protect the

10

integrity of the process, not any "right" to serve. Only a "qualified individual" has an "opportunity to be considered" for jury service and even then such individual is subject to exclusion if his service "would be likely to disrupt the proceedings." D.C. Code §§ 11-1901, 1908(b). These procedures lack any language explicitly mandating that the government allow Mr. Atherton to serve on the grand jury based on specific criteria, and so under binding precedent create no substantive right to serve on a grand jury. Thus, any violation of the District's procedures does not in itself violate the Constitution or create any liberty interest protected under the Due Process Clause.

Furthermore, having failed to challenge in his prior appeal the district court's conclusion that he had not stated a property deprivation claim, Mr. Atherton has forfeited his right to advance that specific claim here. In any event, upon his dismissal, Mr. Atherton could no longer claim any entitlement to payment that is reserved for persons *serving* on a Superior Court grand jury.

2. At the very least, it is clear that Ms. Bailey Jones did not violate a clearly established constitutional right in dismissing without judicial involvement a grand juror reported by the supervising grand jury attorney to be disrupting the grand jury's ability to conduct its business. No decision specifically addresses the procedural due process rights of a serving grand juror, and neither controlling authority nor a consensus of persuasive authority prohibits a juror officer from dismissing a disruptive grand juror without judicial involvement.

11

Each of Mr. Atherton's various attempts to argue that qualified immunity nonetheless does not apply is meritless.  *First*, Ms. Bailey-Jones's action is not the type of action that is so obviously illegal that it can be said to violate a clearly established right even in the absence of a judicial precedent.  It cannot be reasonably characterized as anything close to a shocking abuse of government power.  Moreover, even a violation of Super. Ct. R. Crim. P. 6(g), which authorizes judges to excuse grand jurors for cause, would not, in the absence of judicial precedent, violate a clearly established right because Rule 6(g) creates no interest protected by the Fifth Amendment, let alone one that is clearly established.  And here it is far from clear that there was a violation of Rule 6(g) because the "Superior Court," including at least arguably its juror officer, is authorized by statute to exclude a juror who "would be likely to disrupt the proceedings."  D.C. Code § 11-1908(b)(1).

*Second*, the requirement for a violation of a clearly established constitutional right cannot be satisfied by cases addressing a trial court's supervision of a petit jury, which is fundamentally different from the court's limited involvement in grand jury functions.  Mr. Atherton's dismissal implicates a component of the grand jury's day-to-day functioning, which, unlike a petit jury, the court does not traditionally oversee. Indeed, this separation between the grand jury and the court provides further support for the district court's grant of qualified immunity.  Operating largely independent of the court, Ms. Bailey-Jones could not have reasonably known that in dismissing a

12

disruptive grand juror without judicial oversight she was violating a clearly established constitutional right.

*Third*, lacking a clearly established right to which he is entitled, Mr. Atherton argues that Ms. Bailey-Jones should be denied qualified immunity because his dismissal violated *other people's* clearly established rights—those of criminal suspects to an independent and properly constituted grand jury. Controlling authority makes clear, however, that courts should consider the *same* right when evaluating the two steps of the qualified immunity analysis. Mr. Atherton thus cannot hop between rights by asserting a criminal suspect's right to indictment by a grand jury at one step and his own alleged right to due process before his dismissal from the grand jury at the other. In any event, he fails to show it was clearly established that in Mr. Atherton's absence the grand jury would no longer be independent or properly constituted, particularly since his own admissions establish that he was dismissed for a legitimate purpose—to avoid disrupting further the grand jury proceedings.

*Fourth*, Mr. Atherton argues that he has alleged facts sufficient to reasonably infer that Ms. Bailey-Jones knowingly acted unlawfully. However, Mr. Atherton cannot dispense with the *objective* requirement that the right be clearly established and thus that a "reasonable" juror officer would have known of it. It does not matter what Ms. Bailey-Jones personally thought. And, in any event, the inferences Mr. Atherton argues are reasonable are speculative and implausible. His allegations and the record

13

do not suggest in any way that she thought she was acting unlawfully, but instead that she was acting consistently with a good-faith interpretation of District law.

*Fifth*, Mr. Atherton argues the district court erred by basing its grant of qualified immunity, in part, on the evidence that the Superior Court did not have formal procedures for, and judicial involvement in, removing grand jurors at the time and an informal practice of delegating those decisions to the juror office. But any such error is harmless given the absence of judicial precedent clearly establishing the right he claims. In any event, the district court's reasoning is supported by Chief Judge King's affidavit and the juror officer's job description. At the very least, these materials provide further support for the district court's conclusion that Ms. Bailey-Jones did not violate a clearly established constitutional right.

## ARGUMENT

Qualified immunity protects an official's conduct unless the plaintiff makes two essential showings. First, the facts alleged must "show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, that right must be "clearly established" at the time of the alleged violation. *Id.*; *Bame*, 637 F.3d at 384. Qualified immunity thus "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson*, 555 U.S. at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It relies on the

14

"objective reasonableness of an official's conduct, as measured by reference to clearly established law." *Harlow*, 457 U.S. at 818.

Courts may "exercise their sound discretion" in deciding which of the two elements of a qualified-immunity analysis to address first. *Pearson*, 555 U.S. at 236. In this case, the Court may affirm the judgment for Ms. Bailey Jones on either ground.

## I.     Ms. Bailey-Jones Did Not Violate Any Constitutional Right In Dismissing Mr. Atherton From The Grand Jury.

Mr. Atherton's argument begins with the false assertion that "it should be taken as law of the case that Mr. Atherton had a due process right to appear before a judge prior to being dismissed from the grand jury" because the "District Court implicitly assumed that [his] due process rights were violated." Atherton Br. 18. This is clearly incorrect. Far from finding that Mr. Atherton had any right relevant to his removal from the grand jury, the district court exercised its discretion to "address the second prong of the qualified immunity analysis first" because it was "far from obvious" that Mr. Atherton enjoyed any such right and it was plain that such a right was not clearly established. JA 51 (quoting *Pearson*, 555 U.S. at 237). Moreover, the district court could not establish "law of the case" preventing *this* Court from considering both parts of the qualified-immunity analysis. This Court always retains authority to affirm a trial court's judgment on alternative legal grounds. *See Wilburn v. Robinson*, 480 F.3d 1140, 1148-49 (D.C. Cir. 2007).

15

This Court can make the same choice as the district court and affirm based on the absence of any clearly established right, as we discuss below. It can also conclude at the outset, however, that Mr. Atherton failed to show any violation of his due process rights.

A. **There is no constitutional right to serve on a Superior Court grand jury, and Mr. Atherton errs in trying to locate a protected liberty interest in local laws that merely create procedures.**

As the district court concluded, "[t]here is no constitutional right to serve on a grand jury." RD 52, at 6. Although grand jury service is unquestionably important, it is a duty, a civic obligation—not an individual right. Because the Constitution itself does not establish that he has any substantive interest in grand jury service, Mr. Atherton relies on local law that, he claims, creates an interest protected by the Fifth Amendment. Atherton Br. 17. That claim is meritless. The local laws that purportedly establish a protected liberty interest establish only procedures, and "the mere fact that the government has established certain procedures does not mean that the procedures thereby become substantive property or liberty interests entitled to federal constitutional protection under the Due Process Clause." *Brandon v. District of Columbia*, 823 F.2d 644, 648 (D.C. Cir. 1987). Additionally, the local provisions he references do not contain explicitly mandatory language sufficient to create a constitutionally protected interest in grand jury service.

16

Mr. Atherton can point to no "entitlement" which he has been denied without due process. As this Court has noted:

> It is clear that state law which generates a legitimate claim of entitlement can create an interest the deprivation of which triggers application of the Due Process Clause. It is equally clear, however, that state-created *procedures* do not create such an entitlement where none would otherwise exist.

*Doe by Fein v. District of Columbia*, 93 F.3d 861, 868 (D.C. Cir. 1996) (*per curiam*) (emphasis in original) (citations omitted). "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). "The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right." *Id.* at 250-51.

The provisions of District law on which Mr. Atherton relies to assert a liberty interest create only procedures, not substantive rights. They set forth which persons may excuse someone from jury service and for which reasons. D.C. Code § 11-1901; D.C. Super. Ct. R. Crim. P. 6(g). They do not create an entitlement prohibiting Mr. Atherton's removal from grand jury service without the process he demands. Thus, even if Mr. Atherton could show a violation of the District's procedures because there was no pre-deprivation hearing, such a violation is not constitutionally cognizable.

17

*Brandon*, 823 F.2d at 649 (state does not violate individual's due process rights by deviating from its own procedures).

Put another way, the procedures that Mr. Atherton references protect the integrity of the jury process, not any "right" to serve. Under District law, jury service is a civic duty, not an individual right. Only a "qualified individual" may serve, and even then such an individual has only an "opportunity to be considered," and then an "obligat[ion] to serve" subject to "exclu[sion]" if, among other reasons, "his or her service as a juror would be likely to disrupt the proceedings." D.C. Code §§ 11-1901, 1908(b); *see* D.C. Code § 11-1906 ("Qualification of jurors"). A juror cannot excuse himself from service and an individual who fails to appear for jury service may be punished by a fine of $300 and/or imprisoned for seven days. D.C. Code § 11-1907(b). These are not procedures intended to protect, let alone create, a substantive right to serve on a grand jury.

*A fortiori*, these provisions of District law do not contain the type of "explicitly mandatory language, in connection with the establishment of specified substantive predicates to limit discretion," which the Supreme Court has found necessary to compel the conclusion that the State has created a liberty interest. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989). Nothing in the language of these provisions requires a certain result upon a finding that certain criteria have been met. Any

18

procedural violation here does not in itself violate the Constitution or create any

interest for Mr. Atherton protected under the Due Process Clause.

> **B.      Mr. Atherton forfeited the particular contention that he had a constitutionally protected property interest in continuing grand jury service, and in any event that contention is also meritless.**

Before the prior appeal to this Court, the district court concluded that Mr.

Atherton had failed to state a "claim based on a property deprivation."  RD 52, at 6.

He did not challenge that finding in that appeal.  Nonetheless, he now claims a Fifth

Amendment right to process based on a property interest: the $34 a grand juror is paid

for each day he serves on a grand jury.  Atherton Br. 22-23.  But absent exceptional

circumstances not present here, "appellate courts are precluded from revisiting . . .

prior rulings of the trial court that could have been but were not challenged on an

earlier appeal."  *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 740 (D.C. Cir. 1995)

(emphasis omitted).  Having failed to challenge in his prior appeal the district court's

conclusion that he had not stated a claim based on a protected property interest, Mr.

Atherton has forfeited his right to advance such a claim here.

Even if this claim is considered, it is without merit.  "It is well understood that,

under the Fifth Amendment Due Process clause, '[t]o have a property interest in a

benefit, a person clearly must have more than an abstract need or desire and more than

a unilateral expectation of it.  He must, instead have a legitimate claim of entitlement

to it.'"  *Roth v. King*, 449 F.3d 1272, 1284 (D.C. Cir. 2006) (quoting *Town of Castle*

19

*Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005)). Mr. Atherton compares his dismissal to a termination from public employment. Atherton Br. 23. That comparison is inapt. A public employee's legitimate claim of entitlement to continuing employment absent sufficient cause for termination may be based on "rules and understandings" specific to his relationship to his employer. *Perry v. Sniderman*, 408 U.S. 593, 602-03 (1972). The rules and understandings that inhere in that relationship are wholly unlike those in the relationship between a grand juror and a court system.

Mr. Atherton looks to D.C. Code § 11-1912(a), but that statute does not establish any continuing right to jury service or even address who may serve on a grand jury or for how long; it merely provides that "grand and petit jurors *serving* in the Superior Court shall receive fees and expenses at rates established by the Board of Judges." (Emphasis added). Upon his dismissal, Mr. Atherton could no longer claim any legitimate claim of entitlement to payment that is reserved for persons "serving" on a Superior Court grand jury.

## II.  Ms. Bailey-Jones Did Not Violate Any Clearly Established Right In Dismissing Mr. Atherton From The Grand Jury Without Judicial Involvement Where His Conduct Was Reported To Be Disrupting The Grand Jury's Business.

The Court in the alternative can decide this case based on the more modest conclusion that Mr. Atherton suffered no violation of a clearly established right. That is particularly clear given "the absence of any legal precedent at the relevant time

establishing the alleged due process right." JA 55. Mr. Atherton's attempts to avoid the conclusion that qualified immunity accordingly protects Ms. Bailey-Jones are meritless.

### A. Neither controlling authority nor a robust consensus of persuasive authority prohibited a juror officer from dismissing a disruptive grand juror.

"'Clearly established' for purposes of qualified immunity means that 'the contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right.'" *Wilson v. Layne*, 526 U.S. 603, 614-15 (1999) (internal brackets omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has been previously held unlawful, but it is to say in light of pre-existing law that the unlawfulness must be apparent." *Id.* at 615 (quoting *Anderson*, 483 U.S. at 639). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 231 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). Qualified immunity thus "gives government officials breathing room to make reasonable but mistaken judgments," *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011), and it "provides ample protection to all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

21

In determining whether applicable law is clearly established, "a court must look to 'cases of controlling authority in [its] jurisdiction.'" *Youngbey v. March*, 676 F.3d 1114, 1117 (D.C. Cir. 2012) (quoting *Wilson*, 526 U.S. at 617). Further, "in the absence of 'controlling authority,' a 'robust consensus of cases of persuasive authority' is necessary to demonstrate clearly established law." *Id.* (quoting *al-Kidd*, 131 S. Ct. at 2084 (internal citation omitted)). Neither exists here.

The district court found, and Mr. Atherton admitted, that there are not any "decisions specifically addressing the procedural due process rights of impaneled grand jurors." JA 52. The district court further correctly reasoned that decisions addressing the propriety of removing petit jurors during trial do not establish, clearly or otherwise, what if any right a grand juror enjoys given the "fundamental differences" between "a trial judge's supervision over a petit jury at trial" and the court's limited involvement in grand jury functions.[1] JA 53. Thus, pre-existing law did not clearly prohibit the dismissal of a grand juror without judicial involvement and the unlawfulness of the dismissal challenged here would not have been apparent to a

---

[1]     Moreover, a judge observing disruptive juror behavior even during a trial is not required to inquire of the juror before removing him/her. *United States v. Zerduche*, 133 Fed. Appx. 599, 600 (11th Cir. 2005) (juror that was "yawning, squirming, moving around" and inattentive removed without further inquiry); *United States v. Bradley*, 173 F.3d 225, 230 (3d Cir. 1999) (sleeping juror removed without further inquiry).

reasonable juror officer.  That simple ground is sufficient for this Court to affirm the

judgment for Ms. Bailey-Jones.

> **B.    Mr. Atherton's Arguments For Why Qualified Immunity Should Not Apply Despite The Absence Of Controlling Authority Or A Robust Consensus Of Persuasive Authority Are Meritless.**

Mr. Atherton attempts in many different ways to challenge the district court's

straightforward conclusion that qualified immunity must protect Ms. Bailey-Jones

because of the absence of case law forbidding what she did.  All of these attempts fail.

> 1.    This is not the rare case in which a violation of law is clear even if judicially unprecedented.

Mr. Atherton cannot avoid the conclusion that qualified immunity applies by

arguing that his dismissal from the grand jury is "a clear but judicially unprecedented

constitutional violation."  Atherton Br. 21.  The cases where resort to case law is

unnecessary generally involve behavior that shocks the conscience.  *See, e.g.*, *Hope v.

Pelzer*, 536 U.S. 730, 738 (2002) (rejecting need for a materially similar case to

clearly establish an Eighth Amendment violation where inmate was handcuffed to a

hitching post for seven hours in the hot sun without regular water or bathroom

breaks).  Mr. Atherton's removal from the grand jury could not reasonably be

characterized as anything close to a shocking abuse of government power.  Mr.

Atherton concedes that "a few grand jurors seemed upset" by his actions (JA 14-15

¶ 20), that he was alleged to have disrupted the grand jury proceedings and that this

alleged disruption was communicated to Ms. Bailey-Jones (JA 17 ¶¶ 35-36), and that

23

he was dismissed "allegedly because he was disruptive" (JA 15 ¶ 24). Even assuming he had not actually been disruptive or did not receive necessary process, Mr. Atherton's admissions demonstrate that he was removed in furtherance of a legitimate interest in avoiding further disruption in the grand jury proceedings.

Nor is Mr. Atherton right to contend that his dismissal was so clearly in violation of local statutes or rules that he did not need to identify any judicial precedent. The best argument he has in this regard is that Rule 6(g) says judges "may" excuse grand jurors for cause. Although that rule speaks only of judges, it does not expressly forbid other court officials from excusing jurors for cause. Moreover, even if there were a clear violation of Rule 6(g), that would not show a violation of a clearly established right under the Fifth Amendment because Rule 6(g) creates no interest protected by the Fifth Amendment, as discussed above. Violation of Rule 6(g) thus would not show a violation of a disruptive grand juror's putative Fifth Amendment right to process before dismissal, let alone a clearly established right.

Moreover, rules are valid only to the extent they are consistent with governing statutes. *District of Columbia v. Brookstowne Cmty. Dev. Co.*, 987 A.2d 442, 449 (D.C. 2010). The relevant statute authorizes the "Court" to exclude from jury service a juror who "would be likely to disrupt the proceedings," D.C. Code § 11-1908(b)(1), where the word "Court" is defined expansively to include "the Superior Court of the District of Columbia and may include any judge of the Court acting in an official

24

capacity," D.C. Code § 11-1902(4).  The first part of that definition at least arguably includes juror officers employed by the Superior Court, especially considering that the reference to "the Superior Court" in the second part would be surplusage if only a "judge of the Court acting in an official capacity" were authorized to excuse a grand juror.  *Cf. United States v. Menasche*, 348 U.S. 528, 538-39 (1955) (recognizing the Court's duty, where possible, to give effect to every word of a statute).  It is thus far from clear that there was even a violation of Rule 6(g) in the first place.

> 2.     The law relating to grand jurors is not clearly established by cases addressing a court's supervision of a petit jury during trial.

The district court correctly concluded that the requirement for clearly established law cannot be satisfied here by cases addressing a trial court's supervision over a petit jury at trial.  JA 53.  Judicial supervision of petit and grand juries is not comparable, as the Court is aware and this case readily demonstrates.

Mr. Atherton wrongly dismisses these differences, arguing that his removal implicated the court's role in "calling the grand jurors together and administering their oaths of office."  Atherton Br. 27 (quoting *United States v. Williams*, 504 U.S. 36, 47 (1992)).  But merely convening the grand jury does not implicate, as does Mr. Atherton's dismissal, a component of the grand jury's day-to-day functioning, which "generally operates without the interference of a presiding judge."  *Williams*, 504 U.S. at 48.  Mr. Atherton thus errs in suggesting that the traditional independence of the grand jury calls for greater, not lesser, judicial oversight of juror dismissals.  Atherton

25

Br. 27-30. To the contrary, the power to prescribe rules of grand jury procedure "is a very limited one, not remotely comparable to the power [courts] maintain over their own proceedings." *Williams*, 504 U.S. at 50. "Given the grand jury's operational separateness from its constituting court, it should come as no surprise that [the Supreme Court has] been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure." *Id.* at 49-50. Here, since the juror office operates largely independent of the judges of the court, a reasonable juror officer would not have known that dismissing a disruptive grand juror without judicial oversight violated clearly established law.

Mr. Atherton also argues based on *United States v. Brown*, 823 F.2d 591 (D.C. Cir. 1987), that the unlawfulness of a juror officer dismissing a disruptive grand juror is clearly established by precedent prohibiting a trial court from dismissing a petit juror during deliberations if the juror's request stems from doubts about the sufficiency of the government's evidence. Atherton Br. 24-26. Mr. Atherton expands beyond recognition the *Brown* Court's holding. The Court found that granting a removal request from a deliberating petit juror violated a criminal defendant's right to a unanimous verdict. 823 F.2d at 597. That holding thus has no application to a disruptive grand juror for two reasons. First, the holding protects a criminal defendant's constitutional rights, not a juror's interest in continuing jury service. *See id.* at 595-96. Second, the right at issue is the defendant's right to a unanimous

26

verdict.  *See id.*  A grand jury indictment does not require unanimity; a grand jury is composed of "not less than 16 nor more than 23 members" and the concurrence of only 12 jurors is needed for an indictment to issue.  Super. Ct.  R. Crim. P. 6(a)(1)&(f).

Furthermore, even if *Brown* were applicable to a grand jury, the juror in *Brown* spoke "of the evidence offered at trial" and there was a "substantial possibility" that he "requested to be discharged because he believed that the evidence . . . was inadequate to support a conviction."  823 F.2d at 596-97.  By contrast, the information reported to Ms. Bailey-Jones did not concern the grand jury's deliberations on the merits of any particular case.  Mr. Atherton's complaint alleges that AUSA Zachem communicated to Ms. Bailey-Jones that he was disruptive because "he delayed grand jury deliberations by seeking jury instructions missing from the grand jury instruction book."  JA 17 ¶¶ 36-37.  There is no alleged communication with Ms. Bailey-Jones concerning any evidence that was presented or that any particular grand jury matter was identified.  AUSA Zachem's e-mail, similarly, focuses solely on the concern that Mr. Atherton's "requests, in conjunction with extensive questioning of both prosecutor and witness alike, was clearly agitating other members of the grand jury."  JA 27.

At the very least, the applicability to a grand juror's dismissal of precedent concerning a deliberating petit juror would not have been clear to a reasonable juror officer.  Given the absence of pre-existing law and the communication alleged in Mr. Atherton's complaint, Ms. Bailey-Jones could not have reasonably known that

27

dismissing him from the grand jury violated any "clearly established statutory or constitutional rights" of which a reasonable juror officer would have known. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1988).

> 3.    Mr. Atherton may not rely on other people's constitutional rights to defeat qualified immunity, and in any event Ms. Bailey-Jones could not have reasonably known that dismissing a disruptive juror violated any clearly established right of a criminal defendant.

The Court should also reject Mr. Atherton's novel argument that he need not demonstrate that his own right to due process was clearly established because his dismissal violated the clearly established rights of criminal suspects to a "properly constituted and independent grand jury." Atherton Br. 35. He fails to identify any case authority that supports this argument, for it is in fact inconsistent with controlling authority.

The Supreme Court has made clear that, when considering the two parts of the qualified-immunity analysis, courts should consider the *same* right in each part. The first part asks whether a constitutional right was violated. *Pearson*, 555 U.S. at 232. Here, Mr. Atherton relies (as he must) on his own claim to a due process right. The second part of the analysis requires the court to consider "whether the right *at issue* was clearly established" only if the first step—here, Mr. Atherton's alleged due process right—was satisfied. *Id.* (emphasis added); *see Saucier*, 533 U.S. at 201 ("whether *the* right was clearly established" (emphasis added)). Yet Mr. Atherton's argument severs completely the connection between the two steps of the qualified

28

immunity analysis, explicitly asking this Court to consider one right for one step of the analysis and an entirely different right—at that, a right he lacks standing to invoke independently—for the other step.  That is impermissible.

In any event, Mr. Atherton's argument that the grand jury was no longer independent or duly constituted after his removal, such that criminal defendants' rights were clearly violated, is unpersuasive.  Again, Mr. Atherton concedes that his actions upset several grand jurors, that he was alleged to have disrupted the grand jury proceedings, that this alleged disruption was communicated to Ms. Bailey-Jones, and that he was dismissed by her because he was disruptive.  Mr. Atherton's own admissions establish that he was removed to avoid further disruption to the grand jury proceedings.  It is implausible to conclude that a reasonable juror officer would have known that in his absence the grand jury would no longer be independent or duly constituted, or that her action would violate the rights of anyone later indicted.

> 4. Because the qualified-immunity analysis incorporates an objective rather than subjective standard, it does not matter if Mr. Atherton sufficiently pled or submitted facially plausible evidence that Ms. Bailey-Jones knowingly violated any right, and in any event he did not do so.

In another attempt to convince the Court that it should not enforce the requirement that he show the constitutional right he alleges Ms. Bailey-Jones violated was clearly established, Mr. Atherton argues that he has alleged facts and submitted evidence to plausibly suggest that Ms. Bailey-Jones dismissed Mr. Atherton to "stifle

29

dissent and expedite indictments by the grand jurors," and thus that she *knowingly* violated the law. Atherton Br. 38.

The qualified-immunity analysis turns, however, on an objective rather than a subjective standard. Mr. Atherton must demonstrate that Ms. Bailey-Jones's conduct violated clearly established constitutional rights "of which a reasonable person would have known," *Harlow*, 457 U.S. at 818, based on either controlling authority from this jurisdiction or "a robust consensus of cases of persuasive authority," *al-Kidd*, 131 S. Ct. at 2084. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. Mr. Atherton fails to address this objective standard. His argument does not address what a reasonable juror officer would have known but what he contends Ms. Bailey-Jones personally thought. The argument is thus meritless.

Mr. Atherton's reason for arguing otherwise is based on a misinterpretation of the Supreme Court's recognition that "the defense of qualified immunity, '[w]hen properly applied . . . protects 'all but the plainly incompetent or those who knowingly violate the law.'" Atherton Br. 36 (quoting *al-Kidd*, 131 S. Ct. at 2085) (emphasis omitted). The Court was not thereby changing the well-established two-part test for qualified immunity—and in particular the requirement to demonstrate that the constitutional right alleged to have been violated was clearly established at the time of his dismissal—but rather describing the result of the proper application of that test. It

does not matter if Ms. Bailey-Jones *thought* she was violating the law where the law was not clearly established.

In any event, the material Mr. Atherton submitted does not support a plausible inference that Ms. Bailey-Jones thought she was violating the law. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

Mr. Atherton alleges that an unconstitutional motive can be inferred from the allegations in his complaint that Ms. Bailey-Jones failed to honor her promise to provide him a written explanation for his dismissal and from his conclusion that she "knew she was overstating her authority when she told [him] that she had the right to dismiss grand jurors." Atherton Br. 37-38. Further, Mr. Atherton argues that the fact that Ms. Bailey-Jones "solicited a supporting email . . . suggests that [she] was quite aware" of the unlawfulness of her actions and "verifies that [she] knew she was overstating her authority." Atherton Br. 41. He also argues that the fact that Ms. Bailey-Jones forwarded AUSA Zachem's e-mail to her supervisor shortly after receiving it "strongly suggests that Mr. Atherton's dismissal had quickly become a matter of serious concern within the Superior Court juror office." Atherton Br. 42.

31

Knowingly unlawful conduct cannot plausibly be inferred from these allegations or evidence, which are entirely consistent with the proposition that she thought her actions were lawful and was acting responsibly to document and report what had happened.

Other evidence in the record makes an inference of knowingly unlawful conduct even more implausible.  It indicates that the reason for Mr. Atherton's dismissal was explained to him both by Ms. Bailey-Jones and in a subsequent telephone conversation with the director of the court's Special Operations Division. JA 15, 30.  Furthermore, District law provides for the exclusion of jurors who "would be likely to disrupt the proceedings" and it is without dispute that the information communicated to Ms. Bailey-Jones was that Mr. Atherton was disrupting the grand jury proceedings.  D.C. Code § 11-1908(b)(1); JA 17 ¶¶ 35-36.  Chief Judge King's affidavit provides further evidence of the reasonableness of the conduct complained of here, explaining that "there were no formal procedures in place in April 2001 for disciplining jurors" and that the "practice then in place did not include contacting the chief judge before a grand juror was involuntarily dismissed."  JA 45-46.  And still further, despite being informed that he could, Mr. Atherton did not request a hearing "to explain his actions and/or appeal his dismissal."  JA 30.

The record falls well short of plausibly supporting an inference that Ms. Bailey-Jones knowingly violated the law.  And more clearly, if as Mr. Atherton appears to

recognize the district court could have converted the motions to dismiss into motions for summary judgment, Atherton Br. 42-44, he failed to submit evidence sufficient to create a genuine issue in this regard.

> 5.    It does not matter whether the district court was correct to consider evidence of the absence of formal processes in the Superior Court relating to grand jury discipline and the juror officer's job description, and in any event the court properly found that this evidence provided further support.

As set forth above, based solely on the absence of controlling authority or a robust consensus of persuasive authority, the district court's grant of qualified immunity to Ms. Bailey-Jones was proper.  Mr. Atherton argues that the district court erred insofar as its grant of qualified immunity was based on "the absence in 2001 of any formal procedures for (and judicial involvement in) removing grand jurors in Superior Court, . . . the apparent informal practice of delegating grand juror removal decisions to the Juror Officer, and . . . the Juror Officer's job description implicitly authorizing the practice."  JA 55; Br. 45.  Any such error would be harmless because review is *de novo* and this Court can conclude that Mr. Atherton suffered no violation of a clearly established right without considering that material.

Mr. Atherton also forfeited his ability to dispute whether the district court could consider these matters.  The findings at issue are supported by statements made in Chief Judge King's affidavit and the juror officer's job description.  JA 33-38, 45-46. Mr. Atherton contends that the district court was prohibited from considering what he

33

characterizes as the "informal" policies and practices referenced in the affidavit and the job description for purposes of determining qualified immunity.  Atherton Br. 47.  But in his opposition to defendants' motions to dismiss, Mr. Atherton relied, in part, on the job description and he never argued that the district court was prohibited from considering either the job description or the procedures and practices sworn to in Chief Judge King's affidavit.  RD 72.  "It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal."  *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984).

In any event, Mr. Atherton identifies no authority that prohibits consideration of these materials.  Indeed, it was Mr. Atherton who submitted these materials to support his complaint.  RD 40.  Furthermore, there is nothing informal about the "practice" that Chief Judge King swore was "then in place," a "practice" that "did not include contacting the chief judge before a grand juror was involuntarily dismissed."  JA 46.  Nor is there anything informal or unofficial about the juror officer's job description.  JA 33-38.

Mr. Atherton also argues that the district court's finding that there was not a formal *procedure* for, and judicial involvement in, removing Superior Court grand jurors "is incorrect as a matter of law."  Atherton Br. 49.  But the fact that there were no "formal procedures" for disciplining jurors and that the "practice then in place did not include contacting the chief judge before a grand juror was involuntarily

34

dismissed," as sworn to by Chief Judge King, is not contradicted by Rule 6(g). While that rule authorizes the chief judge, or a judge he designates, to excuse a grand juror for cause, at the time of Mr. Atherton's dismissal there was neither a procedure for nor practice of the chief judge exercising that authority.

Moreover, as the district court correctly found, "District of Columbia law generally authorizes the removal of a juror on the basis that his service 'would be likely to disrupt the proceedings.'" JA 54 (quoting D.C. Code § 11-1908(b)(1)). Further, as explained above, the authority granted in this statutory provision is reasonably interpreted to extend to the Superior Court's juror officer. The reasonable inference is that there was an "apparent informal practice of delegating grand juror removal decisions to the Juror Officer." JA 55. At the very least, Chief Judge King's affidavit provides further support for the district court's conclusion that Ms. Bailey-Jones did not violate a clearly established constitutional right.

Finally, Mr. Atherton argues that the district court erred in finding that the juror officer's job description provides further support for a practice of delegating to her grand juror removal decisions. Atherton Br. 51. According to him, any support the job description provides for such a practice is undermined by her responsibility to "[keep] abreast of changes in legislation, rules, procedures," including Rule 6, and other provisions requiring knowledge of the "legislation and policies that govern the Juror's Office." JA 34-36. But for the same reasons discussed, applicable legislation

supported an understanding that she could excuse disruptive jurors, and there was neither a procedure nor practice of "contacting the chief judge before a grand juror was involuntarily dismissed."    JA 46.    Thus, Ms. Bailey-Jones's presumptive knowledge of applicable legislation, rules, and procedures does not undermine the district court's finding.  To the contrary, the juror officer's "overarching responsibility . . . to assure the 'smooth operation of the Superior Court's Jury System,'" her responsibility to "'exercise tact, good judgment and discretion in making independent decisions and interacting with jurors,'" and to make "'quick decisions concerning the qualifying, deferring or excusing of jurors,'" JA 55 (quoting JA 36-37), provides further support for the practice the district court found and its decision to grant qualified immunity to Ms. Bailey-Jones.

## CONCLUSION

The district court's order granting the motion of Ms. Bailey-Jones to dismiss should be affirmed.

Respectfully submitted,

IRVIN B. NATHAN
Attorney General for the District of Columbia

TODD S. KIM
Solicitor General

DONNA M. MURASKY
Deputy Solicitor General

/s/ RICHARD S. LOVE
RICHARD S. LOVE
Senior Assistant Attorney General
Office of the Solicitor General

Office of the Attorney General
441 4th Street, NW, Suite 600S
Washington, D.C. 20001
June 2012                     (202) 724-6635

## CERTIFICATE OF SERVICE

I certify that on June 18, 2012, electronic copies of this brief were served through the Court's ECF system, to:

David T. Ralston, Jr.
Benjamin R. Dryden
Foley & Lardner LLP

Alan Burch
R. Craig Lawrence
United States Attorney's Office for the District of Columbia

/s/ RICHARD S. LOVE
RICHARD S. LOVE


## CERTIFICATE OF COMPLIANCE

I further certify that this brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 9,088 words, excluding exempted parts. This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in Times New Roman 14 point.

/s/ RICHARD S. LOVE
RICHARD S. LOVE